UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES E. COMFORT, 03-B-1210,

    Petitioner,

    -v-                                      07-CV-0727(MAT)(JJM)
**ORDER**

DALE ARTUS, Superintendent,
Clinton Correctional Facility,

    Respondent.

---

## I. Introduction

*Pro se* petitioner James Comfort ("petitioner") has filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his judgment of conviction entered on May 19, 2004 in Ontario County Court. Following a jury trial before Judge James R. Harvey, petitioner was convicted of two counts of second-degree rape, one count of third-degree rape, and four counts of endangering the welfare of a child.

## II. Factual Background and Procedural History

Petitioner's convictions arise out of a series of incidents that occurred during August and September 2002, wherein petitioner engaged in sexual intercourse with three females, ages 13, 14, and 15, and solicited a fourth under-aged girl for sexual acts. Trial Tr. 100-19, 146-60, 187-205, 225-36, 241-47. As a result, petitioner was charged with one count each of Rape in the First Degree (New York Penal Law ("P.L.") § 130.35(1)), Rape in the Third

Degree (P.L. § 130.25(2)), and Sexual Abuse in the First Degree (P.L. § 130.65(1)); two counts of Rape in the Second Degree (P.L. § 130.30(1)); and four counts of Endangering the Welfare of a Child (P.L. § 260.10(1)).

A jury trial was held in Ontario County Court before Judge James R. Harvey. Petitioner represented himself with the assistance of a court-appointed legal advisor. Petitioner did not testify on his own behalf, nor did he call any witnesses at his trial.

The jury found petitioner guilty of two counts of second-degree rape, one count of third-degree rape, and four counts of endangering the welfare of a child. He was acquitted of the first-degree (forcible) rape count, and the sexual abuse count was dismissed by the trial court after finding that the evidence before the Grand Jury was legally insufficient to support that charge. Trial Tr. 411-15, Ex. M at 15.

Petitioner was subsequently sentenced to indeterminate, consecutive terms of imprisonment totaling six to eighteen years on the rape convictions, and concurrent terms of imprisonment of one year for each count of endangering the welfare of a child. Sentencing Mins. 42-44.

Through counsel, petitioner filed a direct appeal to the Appellate Division, Fourth Department, which unanimously affirmed the judgment of conviction. People v. Comfort, 30 A.D.3d 1069

(4th Dept. 2006), lv. denied, 7 N.Y.3d 787 (2006). Petitioner also filed a *pro se* motion to vacate the judgment of conviction pursuant to New York Crim. Proc. Law ("C.P.L.") § 440.10, alleging that he was denied a fair trial as a result of juror misconduct. See Respondent's Exhibits ("Ex.") A. By written order, the county court denied the motion on the merits. Ex. C. Petitioner did not seek leave to appeal that decision.

On September 26, 2006, petitioner made an application for a writ of error *coram nobis* to the Appellate Division, Fourth Department, on the ground that he was denied the effective assistance of appellate counsel. Ex. H. That motion was denied by the Appellate Division without opinion. People v. Comfort, 35 A.D.3d 1294 (4th Dept. 2006). In his leave application to the New York Court of Appeals, he argued that his appellate counsel was ineffective, and that he was deprived of his due process rights because he was required to raise that claim in a *coram nobis* application rather than by way of a C.P.L. § 440.10 motion. Ex. K. Leave was denied by the Court of Appeals on June 14, 2007. Comfort, 9 N.Y.3d 841 (2007).

Petitioner then filed the instant petition ("Pet.") for habeas corpus pursuant to 28 U.S.C. § 2254, raising the following grounds for relief: (1) ineffective assistance of appellate counsel; (2) juror misconduct; and (3) the error *coram nobis* procedure in

New York violates the Due Process Clause. Pet. ¶ 23(A)-(C). (Dkt. #1).

For the reasons that follow, the Court finds that petitioner is not entitled to the writ and the petition is dismissed.

**III. Discussion**

    **A.   General Principles Applicable to Federal Habeas Review**

        **1.   Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not

dicta) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's

findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B. Merits of the Petition**

    **1. Ineffective Assistance of Appellate Counsel**

Petitioner first claims that he was denied the effective assistance of appellate counsel because counsel failed to argue on appeal that petitioner's waiver of his right to trial counsel was involuntarily made. Pet. ¶ 22(A); Pet'r Mem. 14. The Appellate Division, in denying petitioner's *coram nobis* application, rejected this argument on the merits. Ex. J.

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his attorney's representation was unreasonable under the "prevailing professional norms," and that there is a reasonable probability that, but for his attorney's errors, "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688 (1984). A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992)), cert. denied, 508 U.S. 912 (1993).

To establish ineffective assistance of appellate counsel for failure to raise specific issues, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." Id. Rather, counsel may winnow out weaker arguments on appeal and focus on one or two key issues that present "the most promising issue for review." Jones v. Barnes, 463 U.S. 745, 751-53 (1983). A habeas petitioner must demonstrate that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533. To establish prejudice for failing to raise an issue on direct appeal, a petitioner must show that there was a reasonable probability that the claim would have been successful before the state's highest court. Claudio, 832 F.2d at 803.

Here, petitioner faults his appellate attorney for failing to argue in his brief that petitioner's waiver of his right to trial counsel was involuntarily made. It is clear from the record, however, that petitioner does not raise a colorable argument that would have persuaded the Appellate Division to order a new trial.

The Sixth Amendment guarantees a criminal defendant the right to self-representation. Faretta v. California, 422 U.S. 806, 819-820 (1975). "A criminal defendant may proceed *pro se* if he "'knowingly, voluntarily, and unequivocally' waives his right to

appointed counsel." Williams v. Bartlett, 44 F.3d 95, 99 (2d Cir. 1994) (quoting Johnstone v. Kelly, 808 F.2d 214, 216 (2d Cir. 1986)). Where a defendant has made such a waiver, "[t]he right of a defendant in a criminal case to act as his own lawyer is unqualified if invoked prior to the start of the trial." United States ex rel. Maldonado v. Denno, 348 F.2d 12, 15 (2d Cir. 1965).

Although there is no "talismanic procedure" to determine an effective waiver, see United States v. Tracy, 12 F.3d 1186, 1194 (2d Cir. 1993), the trial court should engage the defendant in an on-the-record colloquy to ensure that he fully comprehends the ramifications of his decision. See id. at 1192; see also Torres v. United States, 140 F.3d 392, 401 (2d Cir. 1998). The judge should consider "'whether the defendant understood that he had a choice between proceeding *pro se* and with assigned counsel, whether he understood the advantages of having one trained in the law to represent him, and whether the defendant had the capacity to make an intelligent choice.'" United States v. Hurtado, 47 F.3d 577, 583 (2d Cir. 1995) (quoting United States v. Calabro, 467 F.2d 973, 985 (2d Cir. 1972) (internal quotation marks and citation omitted)). In other words, the court must be convinced that the accused was aware of the dangers associated with self-representation and that his decision to conduct his own defense was made "with eyes open." Faretta, 422 U.S. at 835.

The record reflects that on November 17, 2003, petitioner (who had, up to that point, been represented by counsel) filed a written motion to the trial court requesting permission to represent himself. The trial court then conducted the following colloquy on that motion during a hearing on November 25, 2003:

> The Court: Mr. Comfort, is it your desire - - to represent yourself?
>
> Defendant: Yes, it is.
>
> The Court: Okay. You know what a lawyer does for you, you have had - - you have been represented by lawyers in at least two counties on serious criminal charges . . . . So you are familiar with what a lawyer will do for you, is that correct?
>
> Defendant: Yes, your honor.
>
> The Court: And it is your desire to proceed on your own? Feel that you are capable of doing that?
>
> Defendant: Yes, your honor.
>
> The Court: Understand the ramifications?
>
> Defendant: Yes.
>
> The Court: I will grant that application, however, I will keep Mr. Miller on as a legal advisor. If you have any queries other than that, you will be your own attorney and the Court will authorize that.

Hr'g Mins. dated 11/25/2003 at 2-4.

It is clear that the trial court granted petitioner's motion only after petitioner satisfied the court that he did want to represent himself, was capable of doing so, and was aware of the

9

consequences.[1] Moreover, petitioner proved to be a competent and effective advocate on his own behalf, whose efforts resulted in acquittal on the first-degree rape charge, which carried a penalty of up to twenty-five years in prison. Trial Tr. 411. The Court has reviewed the entire transcript of the trial proceedings and finds that petitioner argued cogently, made the proper pre-trial motions, presented documentary evidence at trial, conducted extensive voir dire questioning of the prospective jurors, skillfully cross-examined the prosecution's witnesses, and overall was well-prepared to present his own defense.

Petitioner has not demonstrated that his appellate counsel's failure to challenge the voluntariness of petitioner's waiver of his right to counsel was deficient conduct, or that it was prejudicial to the outcome of his case. Indeed, petitioner's underlying claim is without merit, and it is well-settled that "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance" to which a criminal defendant is entitled. Aparaicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) (citations and quotations omitted); see also U.S. v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance."). Accordingly, the Appellate Division's decision was

---

[1] In addition, petitioner emphasized his *pro se* status in his opening statement to the jury ("My decision to proceed pro se was mine and mine only."). Trial Tr. 26.

not contrary to, or an unreasonable application of Supreme Court law in rejecting petitioner's ineffective assistance of appellate counsel claim.

## 2. Juror Misconduct

Petitioner next claims that the trial court abused its discretion in denying petitioner a hearing on his C.P.L. § 330.30[2] motion based on juror misconduct. Pet. ¶ 23(B); Pet'r Mem. 22-26. The claim stems from an alleged conversation between an alternate juror and a sheriff's deputy during deliberations regarding the verdict. To support this claim, petitioner points to a handwritten note from petitioner's legal advisor to petitioner regarding the status of jury deliberations.[3] Petitioner's legal advisor acknowledged writing the note, but denied that the note suggested that there existed a conversation between a deputy and a juror. Id. The trial court denied petitioner's § 330.30 motion, concluding

---

[2] C.P.L. § 330.30 provides that "[a]t any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon the following grounds:

2. That during the trial there occurred, out of the presence of the court, improper conduct by a juror, or improper conduct by another person in relation to a juror, which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict . . . ."

C.P.L. § 330.30(2).

[3] The note reads, "Write down what you heard" - - "The rumor is that she'd have voted guilty on all charges - - I did not hear her say it - - one of the deputy's is the source + they may be busting balls." Sentencing Mins. 18-21; see also Ex. A.

that there was "no indication that the jurors did anything improper." See id.

Subsequently, in his § 440.10 motion, petitioner argued that he was deprived of a fair trial due to unauthorized conduct between a juror and a county sheriff's deputy. The county court denied petitioner's motion without a hearing, holding that "[t]here is no merit to petitioner's claim that prejudicial conduct occurred. . . ." See Order of Ontario County Court, No. 03-04-079, dated 2/27/2005.

He also raised the issue in his direct appeal, arguing that the trial court erroneously dismissed petitioner's C.P.L. § 330.30 motion without an inquiry as to whether there had been any impropriety by either a juror or a deputy. See Pet'r Appellate Br. 11-13; Ex. D. The Appellate Division similarly rejected that claim, holding that petitioner's motion papers did not contain sworn allegations of the facts essential to support the motion, and that they contained only hearsay allegations. Comfort, 30 A.D.3d at 1069.

First, there is no clearly-established Supreme Court precedent that requires a trial court to conduct a post-trial evidentiary hearing to explore an unsubstantiated allegation of juror misconduct. See, e.g., Baher v. Phillips, No. 05 Civ. 5950(LTS)(GWG), 2008 WL 5273830, *8 (S.D.N.Y. Dec. 22, 2008). The Supreme Court "has long held that the remedy for allegations of

juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." Smith v. Phillips, 455 U.S. 209, 215 (1982); see also Remmer v. United States, 347 U.S. 227, 229-30 (1954) ("The trial court ... should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate."). A trial court, however, is not required to hold a hearing in every instance in which juror impartiality is alleged. See, e.g., United States v. Ianniello, 866 F.2d 540, 543 (2d Cir. 1989) ("The duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality.") (internal quotation marks and citations omitted); Wheel v. Robinson, 34 F.3d 60, 65 (2d Cir. 1994) (stating that the trial judge is accorded "broad discretion" in treatment of charges of juror misconduct), cert. denied, 514 U.S. 1066 (1995).

Where, as here, petitioner has made an unsubstantiated hearsay allegation that someone had an unauthorized communication with a juror, an evidentiary hearing is not warranted. United States v. Intersimone, 512 F.Supp.302, 306 (S.D.N.Y. 1981). Rather, a hearing is warranted where the moving party makes the threshold showing that "reasonable grounds exist to undertake such an investigation." Id. (internal quotations omitted); see also United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987) ("Airy generalities,

conclusory assertions and hearsay statements will not suffice [to warrant an evidentiary hearing] because none of these would be admissible evidence at a hearing."). The record is devoid of any evidence to substantiate that a conversation occurred between a deputy and a juror. The trial court inquired of petitioner, his legal advisor, and the prosecutor regarding the matter and found that petitioner's argument was unfounded. Indeed, petitioner's legal advisor (whose handwritten note was the basis for the allegation) later stated that he was unaware of any unauthorized communications with jurors during deliberations. See Letter from James F. Miller, Esq., dated 1/24/2005 at Ex. A. Petitioner has not established a factual basis for his entitlement to an evidentiary hearing on the matter, let alone set forth an error of constitutional magnitude. Accordingly, the state courts' denials of his claims of juror misconduct were not contrary to, or an unreasonable application of clearly established Supreme Court precedent. See Daniels v. Hollins, No. CV-02-4495(FB)(LB), 2006 WL 47412, *8 (E.D.N.Y. Jan. 9, 2006) (Unlike the cases cited by Daniels, where the petitioner submitted affidavits by jurors or other witnesses who could testify about particular juror misconduct that they had directly witnessed, Daniels has only presented hearsay evidence. Thus, because Daniels has not presented any competent evidence, the Court concludes that the state court's denial of his claim without an evidentiary hearing was not contrary

to or an unreasonable application of clearly established Supreme Court law.") (internal citations omitted).

### 3. Challenge to Error *Coram Nobis* Procedure

In his third and final ground for relief, petitioner advances the argument that New York's "creation" of the writ of error *coram nobis* as the exclusive avenue for addressing claims of ineffective assistance of appellate counsel violates the Due Process Clause. Pet. ¶ 23(C); Pet'r Mem. 27-31. Specifically, petitioner argues that the writ "stripped away" certain safeguards provided by the statutory procedure set forth in C.P.L. § 440.10, such as the availability of an evidentiary hearing and a mechanism for review of the *coram nobis* proceeding. Id. Petitioner asserted this claim in his papers seeking leave to appeal the Appellate Division's denial of his petition for writ of error *coram nobis*. Ex. K. The Court of Appeals denied leave on June 14, 2007. Ex. L.

Petitioner labors under a misapprehension of the law. Contrary to his assertion, the writ of error *coram nobis* is a common law writ that predates the 1970 enactment of C.P.L. § 440.10. See L. 1970 c. 996 § 1. Moreover, criminal defendants in New York can seek leave to appeal from orders denying *coram nobis* applications, a procedure that petitioner has clearly taken advantage of. See C.P.L. § 450.90 (permitting leave to appeal for review by the New York Court of Appeals of an intermediate appellate court order granting or denying *coram nobis* relief on the

ground of ineffective assistance of appellate counsel). Finally, while the Appellate Division does not conduct its own evidentiary hearings, it nonetheless has "the flexibility ... to refer factual disputes for hearings to the *nisi prius* court or perhaps to judicial hearing officers." People v. Bachert, 69 N.Y.2d 593, 600 (1987).

Here, petitioner's allegation of ineffective assistance of appellate counsel was plainly meritless, see supra Part III.B.1, and there was a sufficient factual record for the Appellate Division to determine the merits of petitioner's claim without a hearing. Petitioner therefore cannot establish that New York's *coram nobis* procedure violated his due process rights by summarily denying his application. Roa v. Portuondo, 548 F.Supp.2d 56, 87 (S.D.N.Y. 2008) ("[T]he factual record was plainly sufficient for the Appellate Division to determine the merits of Roa's ineffective assistance of appellate counsel claims without a hearing. Moreover, the alleged deficiencies that Roa contends should have been raised as part of his appeal have each been shown to be meritless. There consequently is no basis for Roa's claim that the Appellate Division violated his due process or equal protection rights.")

Accordingly, petitioner has not set forth a basis for habeas relief, and this claim is denied.

**IV. Conclusion**

For the reasons stated above, James E. Comfort's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated: May 18, 2010
Rochester, New York